IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLEN R.,[1]                                                   Case No. 6:20-cv-00790-SB

                    Plaintiff,                     **OPINION AND ORDER**

           v.

ANDREW SAUL, Commissioner of Social
Security,

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

       Allen R. ("Plaintiff") filed this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42

U.S.C. § 405(g). All parties have consented to the jurisdiction of a U.S. Magistrate Judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

Commissioner's decision and remands for an award of benefits.

_____

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.     PLAINTIFF'S APPLICATION**

Plaintiff was born in September 1981, making him thirty-three years old on June 25, 2015, his amended alleged disability onset date. (Tr. 14, 37, 230.) Plaintiff has a ninth-grade education and past work experience as a cement mixer, dishwasher, and stocker. (Tr. 222-23.) In his application, Plaintiff alleged disability due to testicular cancer, teratoma tumors in his lymph nodes, a broken back, osteoporosis, a leaky heart valve, a small heart blockage, hiatal hernia,

stomach ulcers, colitis, irritable bowel syndrome, diverticulitis, a chipped rotary cuff in his left shoulder, anxiety, depression, attention deficit disorder, and a learning disability. (*See* Tr. 221.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on July 6, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 154.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on February 12, 2018. (Tr. 34-66.) On June 1, 2018, the ALJ issued a decision denying Plaintiff's application. (Tr. 11-33.) On March 12, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at

step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 14-33.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 25, 2015, his amended alleged disability onset date. (Tr. 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: migraines, ulcerative colitis, irritable bowel syndrome, chronic clostridium difficile ("C. Diff.") infection, testicular carcinoma, coronary artery disease with mild congestive heart failure, thoracic and lumbar degenerative disc disease, lower extremity neuropathy, varicose veins, obesity, insomnia, generalized anxiety disorder, panic disorder, and attention deficit/hyperactivity disorder. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.*)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to the following limitations: (1) Plaintiff can lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently; (2) Plaintiff can stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday; (3) Plaintiff can occasionally push and pull with his upper extremities; (4) Plaintiff cannot crawl or climb ladders, ropes, and scaffolds; (4) Plaintiff can occasionally stoop, kneel, crouch, and climb stairs and ramps; (5) Plaintiff cannot balance without support; (6) Plaintiff can understand,

remember, and carry out uncomplicated and routine instructions that can be learned in thirty days

or less; and (7) Plaintiff can perform low stress work and have occasional public contact.

(Tr. 20.) At step four, the ALJ concluded that Plaintiff had no past relevant work. (Tr. 25.) At

step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs

existed in the national economy that he could perform, including work as: (1) an assembler, (2)

hand bander, and (3) circuit board touch-up screener. (Tr. 26.)

## DISCUSSION

Plaintiff argues on appeal that the ALJ erred by failing to provide: (1) clear and

convincing reasons for discounting Plaintiff's symptom testimony; and (2) specific and

legitimate reasons for discounting the opinion of Plaintiff's treating physician, Dr. Douglas

Crane ("Dr. Crane"). (Pl.'s Opening Br. at 7-19.) As explained below, the Court concludes that

the Commissioner's decision is based on harmful legal error and not supported by substantial

evidence. The Court concludes that Plaintiff satisfies the credit-as-true standard, and therefore

remands for an award of benefits.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to

which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664,

678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 21, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to do so here.

### 1.    Daily Activities

The ALJ discounted Plaintiff's testimony on the ground that it is inconsistent with Plaintiff's "activities of daily living." (*See* Tr. 24, finding that "the claimant's activities of daily living contradict many of his allegations"). In support of this finding, the ALJ noted that: (1) Plaintiff "admitted he had a girlfriend/wife and could maintain his own personal care, help care for his son,[and] prepare simple meals," (2) Plaintiff could perform household chores such as "fold the laundry, do the dishes, sweep/vacuum, take out the garbage, and fix things/do small

repair jobs," and (3) Plaintiff can "watch television, play video games, play cards, leave the house daily, go shopping, visit family members, and go to church." (Tr. 24) (simplified). Plaintiff argues that his reported activities are not inconsistent with his symptom testimony and do not demonstrate an ability to perform full time work. (Pl.'s Opening Br. at 14.) The Court agrees.

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." (citing *Light*, 119 F.3d at 792)). "Daily activities may also be 'grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Ghanim*, 763 F.3d at 1165 (citation omitted).

In discounting Plaintiff's testimony, the ALJ concluded that Plaintiff's ability to perform household chores, prepare meals, watch television, play video games, occasionally shop in stores, and attend church "suggest[s] an ability to perform a range of unskilled, sedentary work." (Tr. 24.) However, the basis for the ALJ's finding is unclear. For example, the ALJ noted that Plaintiff can prepare simple meals, but the ALJ failed to explain how Plaintiff's ability to make "meals with minimal cooking" such as "sandwiches" and "microwavable food" (Tr. 239) is inconsistent with his claimed limitations. (*See also* Tr. 240, noting that, due to his impairments, Plaintiff "cannot prepare a 3-course meal anymore"). The ALJ also noted that Plaintiff visits with family, plays cards, and goes to church, but the record reveals that Plaintiff attends church two to three times a month, and engages in social activities only "every few months or so."

(Tr. 242.) It is not clear how these activities undermine Plaintiff's symptom testimony or suggest an ability to perform full-time work, and the ALJ offered no explanation. *Cf. Fritz v. Berryhill,* 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to satisfy the clear and convincing reasons standard and noting that the ALJ "did not explain how" certain evidence "impacted [the claimant's] credibility"); *see also Rocha v. Berryhill,* 771 F. App'x 447, 448 n.2 (9th Cir. 2019) ("[A]n ALJ must *specifically* identify the testimony [from the claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.") (simplified).

Furthermore, the activities cited in the ALJ's decision do not contradict Plaintiff's testimony. Although Plaintiff reported that he can perform household chores, go to the store, and leave the house daily, he indicated that he does "minimal" housework, that his partner "does most of the physical hands-on chores" (Tr. 239), and that "on good days" he can do five to ten minutes of vacuuming and sweeping (Tr. 53). Plaintiff also indicated that he only shops two to three times a month (Tr. 241), and that Plaintiff's daily outings consist of "taking my son out and watch[ing] him play for about an hour." (*Id.*) Contrary to the ALJ's findings, Plaintiff's limitations in performing these activities are consistent with his self-reported symptoms. *See Meuser v. Colvin,* 838 F.3d 905, 913 (7th Cir. 2016) (explaining that an ALJ cannot "disregard a claimant's limitations in performing" his activities, and noting that the ALJ discounted the claimant's testimony based on, among other things, the claimant's ability to complete chores, but the "ALJ ignored evidence" that the claimant received help from family members and rarely left the house).

The Commissioner argues that Plaintiff's claims of disabling symptoms are inconsistent with his reported activities because: (1) "[i]n contrast with his allegations of debilitating hand numbness, Plaintiff retained the manipulative ability to play video games, play cards, and

prepare simple meals, among other activities"; (2) "Plaintiff testified that he was unable to complete a project due to concentration and focus difficulties, [but] he subsequently admitted that he was able to complete projects, such as small repair jobs"; and (3) Plaintiff's allegations that on certain days he was unable to get out of bed contradicted his reports of preparing his son for school, performing household chores, visiting with family and friends, and leaving the house every day. (Def's Br. at 6.) However, the ALJ did not identify these inconsistencies in her decision (Tr. 24), and the Court is constrained to review only the reasons the ALJ asserted. *See, e.g.*, *Burrell*, 775 F.3d at 1138 ("[T]he [Commissioner] identifies other alleged inconsistencies between Claimant's hearing testimony and her reported daily activities, such as knitting and lace work. But the ALJ did not identify those inconsistencies. 'We are constrained to review the reasons the ALJ asserts.'") (citation omitted); *see also Drake v. Colvin*, No. 15-1250, 2016 WL 4608227, at *7 (N.D. Cal. Sept. 6, 2016) ("Long-standing principles of administrative law require [a court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking. . . . A clear statement of the agency's reasoning is necessary because [a court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (quotation marks and citations omitted).

In sum, the ALJ erred in discounting Plaintiff's testimony based on his daily activities. *See Garza v. Colvin*, No. 14-04425, 2015 WL 1285307, at *10 (C.D. Cal. Mar. 20, 2015) (holding that the ALJ's reliance on the claimant's daily activities was misplaced because the ALJ "listed a few daily activities . . . [but] failed to elaborate at all on how these activities actually conflict with [the claimant's] subjective symptom testimony," and noting that the ALJ's listed activities "could just as easily support a finding of disability").

### 2.    Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 21, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence"). The Ninth Circuit has held that it is appropriate to discount a claimant's testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (citing *Tommasetti*, 533 F.3d at 1039).

However, an ALJ may not reject a claimant's symptom testimony based solely on a lack of objective medical evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain"). Here, the only other reason the ALJ cited to discount Plaintiff's testimony is inconsistency with his activities of daily living. (Tr. 24; *see also* Def.'s Br. at 4-6, acknowledging that the ALJ discounted Plaintiff's subjective symptom testimony due to alleged inconsistencies with his reported activities and the medical evidence in the record). As discussed above, the Court concludes that the ALJ erred in discounting Plaintiff's testimony based on his daily activities. Thus, even if the objective medical evidence is inconsistent with Plaintiff's proffered symptoms, the ALJ cannot rely on a lack of objective medical evidence alone to discredit his testimony. *See Taylor v. Berryhill*, 720 F. App'x 907, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant's testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted).

Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's testimony. *See Heltzel v. Comm'r of Soc. Sec. Admin.*, No. 19-1287, 2020 WL 914523, at *4 (D. Ariz. Feb. 26, 2020) ("Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally

insufficient, a mere lack of objective support, without more, is insufficient to reject Plaintiff's testimony.").

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).[2] "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

---

[2] Because Plaintiff filed his application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13

(citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

     **B.**    **Analysis**

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for

discounting the opinions of his treating physician, Dr. Crane. (Pl.'s Opening Br. at 14-22.) The

Court agrees.

Dr. Crane served as Plaintiff's treating physician beginning in 2013 and met with

Plaintiff monthly. (*See* Tr. 996, 1356.) On February 24, 2016, Dr. Crane completed a cancer

treatment medical source statement. (Tr. 995-99.) Dr. Crane stated that Plaintiff had been

diagnosed with testicular cancer and that he was currently undergoing treatment; Plaintiff

experiences chronic fatigue, chronic diarrhea, abdominal pain and cramping, weight loss, nausea,

malaise, muscle pain and weakness, and disturbed sleep as a result of his diagnosis and

treatment; Plaintiff's medications cause dizziness, drowsiness, and nausea; Plaintiff can walk

four city blocks without rest or severe pain; Plaintiff can only sit or stand for thirty minutes at

one time; Plaintiff can sit and stand for less than two hours total in an eight-hour workday;

Plaintiff requires a job that permits shifting positions at will from sitting, standing, or walking,

and ready access to a restroom; Plaintiff would need to take unscheduled restroom breaks once

an hour per eight hour workday; Plaintiff would need to lie down or rest during a workday every

few hours for thirty minutes; Plaintiff cannot lift or carry any weight; Plaintiff could rarely twist,

bend, or squat, and never climb ladders or stairs; Plaintiff would be off task five percent of the

work day; Plaintiff is incapable of even low stress work; and Plaintiff would miss more than four

days of work per month due to his impairments or treatment. (*Id.*)

On March 6, 2017, Dr. Crane completed a peripheral neuropathy medical source

statement. (Tr. 1356-59.) Dr. Crane stated that Plaintiff suffers from peripheral neuropathy and

experiences numbness in his hands and feet, moderate pain and paresthesia, weakness, sensory

loss, and chronic fatigue; Plaintiff could occasionally twist, bend, or squat; Plaintiff cannot use

his hands and fingers to grasp or twist objects or perform fine manipulations; Plaintiff could use

his arms to reach in front of his body fifty percent of the day, and reach overhead ten percent of

the day, and Plaintiff would need to elevate his leg fifty percent of the time during an eight-hour

workday. (Tr. 1356-59.)

The ALJ assigned Dr. Crane's medical opinion "little weight," finding that his opinion

contradicted his own examination findings, relied heavily upon Plaintiff's own subjective

complaints, was internally inconsistent, and contradicted the objective medical evidence.

(Tr. 24.) "Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Miranda*

*W. v. Saul*, 509 F. Supp. 3d 1270, 1285 (D. Or. 2020) (citations omitted).

First, the ALJ concluded that Dr. Crane's opinion was inconsistent with his own

unremarkable physical examinations indicating normal gait, intact movement, and unremarkable

neurological findings, and cited generally to forty-six pages of medical records. (Tr. 24.) "A

conflict between treatment notes and a treating provider's opinions may constitute an adequate

reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*,

763 F.3d at 1161; *see also Tommasetti*, 533 F.3d at 1041 (noting "incongruity between [a

doctor's] Questionnaire responses and her medical records provides an additional specific and

legitimate reason for rejecting" the opinion).

///

PAGE 13 – OPINION AND ORDER

It is accurate that Dr. Crane consistently assessed Plaintiff as having a normal gait and intact movement. (Tr. 1438, 1441, 1447, 1456, 1458, 1461, 1464, 1466-67, 1471, 1473-79.) However, the ALJ did not identify how these findings were inconsistent with Dr. Crane's assessed limitations caused by Plaintiff's chronic gastrointestinal disease and side effects from his cancer and chemotherapy. Indeed, most of the limitations the ALJ identified as inconsistent with Dr. Crane's treatment notes (e.g., requiring changes in position, unscheduled breaks, time off task, and more than four absences per month) are attributed to Plaintiff's gastrointestinal issues, side effects from his narcotic pain medications, and cancer treatment, not his neuropathy. (*See* Tr. 996-99, including the above-mentioned limitations in Dr. Crane's cancer treatment medical source statement, and noting that Plaintiff's "aggressive chemotherapy can limit him to activities in daily life and make it difficult to hold a job"). While it is possible the ALJ believed that normal gait and intact movement contradicted Dr. Crane's assessed limitations as to Plaintiff's gastrointestinal conditions and cancer treatment symptoms, the ALJ did not explain this connection. In the Court's view, that connection is not obvious. *Cf. Gregory C. v. Comm'r Soc. Sec. Admin.*, 426 F. Supp. 3d 660, 677 (D. Or. 2019) ("While Plaintiff experiences pain and fatigue, it is not obvious that his impairment would cause him to have muscle atrophy, an unnatural gait, a loss of sensation, or a loss of strength.").

Second, the ALJ also noted that Dr. Crane's "extreme limitations to postural and manipulative activities" contradicts his physical examination notes. (Tr. 24.) However, the ALJ's conclusion here is not supported by substantial evidence in the record. The record reflects that, between 2015 and 2017, Dr. Crane consistently reported that Plaintiff suffered from swelling and pain in his lower extremities, multilevel degenerative disc disease, obesity, varicose veins, superficial thrombophlebitis, numbness and tingling in his hands and feet, chronic fatigue, pain,

muscle pain and weakness, and chronic and severe back pain. (Tr. 1436, 1438, 1441, 1444-45, 1447, 1449-51, 1453, 1455, 1458, 1466, 1471.) Contrary to the ALJ's conclusions, Dr. Crane's treatment notes include objective findings that substantiated the postural and manipulative limitations he assessed. For these reasons, the ALJ erred in rejecting Dr. Crane's opinion as unsupported by his treatment notes.[3]

The ALJ also found that Dr. Crane's opinion was contradicted by the medical evidence as a whole, "which shows that [Plaintiff] retained good strength, ambulation, and movement[.]" (Tr. 24). In support of this finding, the ALJ cited generally to over 650 pages of medical records. An ALJ may reject a medical opinion that is "unsupported by the record as a whole." *Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, "[a]n ALJ errs when he considers the claimant's evidence selectively and ignores evidence that contradicts his findings." *Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *5 (D. Or. June 4, 2020).

Here, the ALJ ignored evidence that contradicted his finding regarding Plaintiff's strength and mobility. A review of the records the ALJ cited in support of this finding demonstrate that the ALJ considered Plaintiff's records selectively. For example, treatment notes reflect that Plaintiff often exhibited a steady gait and normal muscle strength (Tr. 1291, 1311, 1317, 1322, 1327, 1332, 1336, 1375, 1385, 1390, 1398-99), but those same treatment notes reflect that Plaintiff suffered from edema, weakness in his extremities, joint pain, back pain, muscle aches, and muscle weakness. (*See* Tr. 1291, 1311, 1317, 1331, 1335, 1374, 1384, 1389,

---

[3] The Commissioner identifies several inconsistencies between Dr. Crane's opinion and his treatment notes. (Def.'s Br. at 9-10.) However, the ALJ did not identify nor discuss these inconsistencies, and the Court is "constrained to review [only] the reasons the ALJ asserts." *Burrell*, 775 F.3d at 1141 (citation omitted); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("A clear statement of the agency's reasoning is necessary because [the court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.").

PAGE 15 – OPINION AND ORDER

1398-99; *compare* Tr. 532, 534, 547, 760, 796-97, 938, 1259, indicating a stable gait and normal musculoskeletal findings, *with* Tr. 568, 570, 782, 847, 902, 1226, 1259, indicating, "unsteady gait," "weak gait," "trace edema," "dizziness," "weakness," and "malaise, fatigue, difficulty walking, and abdominal pain"). A careful review of the record does not support a finding that the medical evidence contradicts Dr. Crane's opinion. Rather, the record corroborates Dr. Crane's assessed limitations despite observations of a normal gait. (*See* Tr. 547, 568, 570, 758, 782, 847, 861, 867, 902, 945, 1149, 1197, 1200, 1226, 1259, 1291, 1311, 1317, 1331, 1335, 1374, 1384, 1389, 1398-99.)

Examining the entire medical record, the Court cannot conclude that contradictory medical evidence provides a specific and legitimate reason for rejecting Dr. Crane's opinion. Although the ALJ highlighted the record evidence that supports his decision to discount Dr. Crane's opinion, she did not address the treatment notes that support Dr. Crane's opinions. *See Melissa B. v. Saul*, No.1:19-cv-00363-SB, 2020 WL 5517260, at *3 (D. Or. Sept. 14, 2020) (holding that the ALJ erred by cherry-picking record evidence that supported his decision to discount the treating physician's opinion and "overlooked significant, probative evidence that contradicted his findings"); *see also Adeena*, 2020 WL 2992191, at *5 (noting that ALJs cannot "cherry-pick" from the record to support their findings and "ignore evidence that contradicts [their] findings").

Third, the ALJ concluded that Dr. Crane's opinions "appear to rely heavily upon the claimant's own subjective complaints[,]" noting that "the only mentions of upper extremity numbness came from the claimant and not from objective findings." (Tr. 24.) "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly

discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). As discussed above, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony, and therefore the fact that Dr. Crane's opinion may be based in part on Plaintiff's subjective complaints is not a specific and legitimate reason for rejecting his opinion. *See Gregory C.*, 426 F. Supp. 3d at 675 ("[B]ecause the ALJ's credibility determination is in error, the fact that Dr. Gandler's limitations are based to some extent on Plaintiff's self-reports is not a specific and legitimate reason for rejecting Dr. Gandler's opinion."). In any event, the record reflects that Dr. Crane's finding that Plaintiff suffered from upper extremity neuropathy was based upon Dr. Crane's physical examination results, not only on Plaintiff's subjective complaints. (*See* Tr. 1449, indicating that Dr. Crane evaluated Plaintiff's neurologic condition and found "very much reduced sensation in the left hand at 80% and 90% on the right" and that Plaintiff "really has no fine sensation in his feet at all"). Accordingly, the fact that Dr. Crane's opinion relied on Plaintiff's self-reports is not a specific and legitimate reason to reject Dr. Crane's opinion.

Finally, the ALJ found that Dr. Crane's opinion was internally inconsistent. (Tr. 24.) Internal inconsistencies in a physician's opinion is a specific and legitimate reason to assign little weight to a medical opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that an ALJ may cite internal inconsistencies in a physician's opinion); *Morgan*, 169 F.3d at 603 (internal inconsistencies in medical opinions constitute relevant evidence). The ALJ noted that, when filling out the peripheral neuropathy medical source statement, Dr. Crane circled in one section that Plaintiff could sit for more than two hours at a time, but in a different section, circled that Plaintiff could sit for less than two hours in a workday. (Tr. 1357.) In other words, Dr. Crane reported that Plaintiff could sit for more than two hours at a time (e.g., two

hours and one minute), and also reported that Plaintiff could sit for less than two hours in a

workday (e.g., one hour and fifty-nine minutes). This single, minor inconsistency alone does not

amount to a specific and legitimate reason to reject Dr. Crane's opinion. *See Correia v. Comm'r*

*Soc. Sec. Admin.*, No. 6:14-cv-00600-MA, 2015 WL 1802204, at *9 (D. Or. Apr. 20, 2015)

(concluding that one of the three reasons the ALJ gave for discounting the plaintiff's treating

physician's opinion was appropriate, but finding that the inconsistencies between the physician's

treatment notes and his opinions did not, without more, amount to a specific and legitimate

reason warranting the rejection of a treating physician's opinion). Accordingly, the ALJ erred in

discounting Dr. Crane's opinion.

## III.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper

course, except in rare circumstances, is to remand to the agency for additional investigation or

explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a

number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of

discretion for a district court not to remand for an award of benefits when [the three-part credit-

as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has

been fully developed and further administrative proceedings would serve no useful purpose; (2)

the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were credited as

true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations

omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to

remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate.

First, the Court finds that the record has been fully developed. It includes several years of treatment notes, Plaintiff's testimony about his symptoms and limitations, and opinions from Plaintiff's treating doctor, Dr. Crane, and registered nurses L. Thurman and Linda Wirebaugh, an examining psychological provider, and three non-examining state medical consultants. (Tr. 69-82, 100-129, 361, 825-830, 932-36, 995-99, 1356-59.) The ALJ asked the VE hypothetical questions that addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 63, the ALJ asked the VE about the customary tolerances for absences and routine rest break periods in the workplace, to which the VE responded that employers will not tolerate missing more than one day per month of work, and that anyone exceeding this customary limit would be unable to maintain employment; Tr. 998-99, Dr. Crane reported that Plaintiff's medical conditions would cause Plaintiff to miss more than four days of work per month, and that Plaintiff will need to take hourly unscheduled breaks during an eight-hour workday).

The Commissioner argues that this is not the "rare" case that warrants a remand for benefits because "Plaintiff's physical and psychiatric examinations, medical record, and activities indicate that Plaintiff can work[,]" and that "the record as a whole creates serious doubt that Plaintiff is in fact, disabled[.]" (Def.'s Br. at 13.) The Court disagrees. Substantial evidence in the record supports Dr. Crane's opinion that Plaintiff's impairments would prevent him from working full-time and maintaining regular attendance.

Furthermore, Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, the Court concludes that Plaintiff satisfies the first part of the credit-as-true analysis.

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and rejecting Dr. Crane's medical opinion. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because his chronic gastrointestinal conditions, peripheral neuropathy, chronic back pain, and side effects from his cancer treatment would cause him to exceed the customary tolerance for absences and breaks. (*See* Tr. 46-47, Plaintiff testified that "flares" of his ulcerative and C. Diff. colitis cause chronic diarrhea resulting in four to five bowel movements per day, each of which require twenty to thirty minute restroom breaks; Tr. 998-99, medical source statement from Dr. Crane opining that Plaintiff would need an unscheduled restroom break once per hour during an eight hour workday, lasting between fifteen and twenty minutes each, and that Plaintiff would miss more than four days of work per month due to his impairments; Tr. 63, the VE testified that "if the absences are greater than [once a month], it

would be difficult for that employer to hire someone that would have such attendance issues, and it would be difficult to maintain employment").

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *Cf. Perez v. Saul*, 855 F. App'x 365, 370 (9th Cir. 2021) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the Commissioner of Social Security for the calculation and award of benefits" where "the ALJ provided legally insufficient reasons to discount the medical evidence and Perez's symptom testimony" and "[i]f the ALJ had credited the evidence as it should have, it would be required to find Perez is disabled"); *Newton v. Saul*, 839 F. App'x 178, 179 (9th Cir. 2021) (reversing district court opinion remanding for further proceedings and instead remanding "with instructions to remand to the ALJ for the calculation and award of benefits" where "the ALJ erred by discounting the opinion of Claimant's treating doctor, the opinion of his examining doctor, and Claimant's own testimony concerning the extent of his symptoms" and "the record is complete, no legally sufficient evidence casts doubt on Claimant's disability, and Claimant first sought benefits seven years ago"); *Campbell v. Saul*, 834 F. App'x 330, 332-33 (9th Cir. 2021) (reversing district court opinion affirming the denial of benefits and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where the claimant's treating physician opined that the claimant would miss more than four days of work per month and "the Vocational Expert has already opined that no jobs exist for one with [the claimant's] limitations").

///

///

**CONCLUSION**

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and remands this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 29th day of September, 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge